501 So.2d 1024 (1987)
Charles Milton FULLER, et al., Plaintiffs-Appellants,
v.
FRANKS PETROLEUM, INC., et al., Defendants-Appellees.
No. 18362-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*1025 Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for plaintiffs-appellants.
Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for defendants-appellees.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Chief Judge.
On November 2, 1982, Charles Milton Fuller, George J. Fuller, and Gennett Enis Fuller Day filed suit against Franks Petroleum, Inc. and The Bass Partnership seeking: (a) cancellation of a mineral lease; (b) damages equal to double the amount of royalties due, interest thereon, and attorney's fees; (c) damages for lost hay production; and (d) damages equal to the amount necessary to restore the drill site location. The petition was later amended to add numerous defendants who were either the original mineral lessees or subsequent assignees of the lease.[1] Franks and Bass were assignees of the original lessees and drilled a producing well on plaintiffs' land.
The essence of plaintiffs' allegations were that defendants failed to pay royalty attributable to condensate produced from the gas well after thirty days notice of nonpayment, and failed to operate the well as a prudent operator by maintaining unnecessary *1026 slush pits, allowing erosion, failing to restore the drill site, denying plaintiffs use of property resulting in loss of hay production, and using improper procedures in shutting in the well after sand fracturing which caused damage to the well's production capabilities.
After trial in 1985, the jury returned special verdicts against the plaintiff on every issue.[2] Judgment was rendered rejecting plaintiffs' demands. A motion for new trial and a motion for judgment notwithstanding the verdict were denied by the trial court.
Plaintiffs appealed, claiming that the jury was clearly wrong in reaching its factual determinations. The jury was allegedly wrong in determining that the lessee had paid royalties or stated a reasonable cause for not paying royalties within thirty days of demand. Additionally, the jury was allegedly wrong in determining that the plaintiffs were not entitled to damages for loss of hay production and the cost of controlling erosion caused by defendants' failure to restore the well site to its original condition. Also, the jury was allegedly wrong in determining that the lessee acted as a reasonably prudent operator in its drilling operations. It is argued that once the foregoing factual determinations are made in favor of plaintiffs, then the plaintiffs are entitled to dissolution of the lease and damages. For reasons set forth in this opinion, we conclude that the jury determinations and the judgment are correct in all respects except as to timely payment of condensate royalties after notice. We will amend the judgment to award past due royalties with interest and attorney's fees, and otherwise affirm.
A brief factual overview will be given before the facts are discussed in more detail under each issue. Franks spudded a well on the Fuller property in January of 1981. The well was completed on April 21, 1981 and shut in until production began on March 18, 1982. The gas produced by the well was sold to United Gas Pipeline, Inc. and the condensate was sold to P & O Falco.
Plaintiffs began receiving royalty payments from Franks for the gas shortly after the well went on production. These payments are not at issue.
The plaintiffs discovered that the royalty checks they received did not contain an amount representing royalties due for the condensate. Hence, a demand was made on Franks for payment of the royalties past due. Franks sent a response letter and allegedly mailed checks representing the amounts due within thirty days. The plaintiffs allegedly did not receive these checks. Upon the lapse of 30 days after making demand, suit was filed seeking cancellation of the lease, damages, and attorney's fees.
Each of the issues raised by plaintiffs requires this court to review the factual determinations of the jury. Although appellate *1027 review extends to the facts of the case as well as the law, we will not disturb a finding of fact by the trial court unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Copple v. Gonyea, 431 So.2d 869 (La.App. 2d Cir. 1983).
PRUDENT OPERATIONWELL COMPLETION
The plaintiffs claim that Franks failed to act as a reasonably prudent operator in its completion of the Fuller Estate No. 1 well. The plaintiffs argue that the recovery of fract water after completion of the sand fracturing process was not properly done. Ray E. Storms, a petroleum engineer, compared the Fuller Estate No. 1 well to the Riser well, which is an offset well to the Fuller well and a more prolific producer. According to Storms, the two wells had very similar characteristics. Both wells produced from the same sand formation with approximately the same thickness of sand at each well. However, he admitted that the Fuller well had a lower permeability.
Storms was of the opinion that the reason the Fuller well produced less than the Riser well was Franks' failure to remove fract water before shutting in the Fuller well. In his opinion, the well was properly hydraulically fractured but the shutting in of the well before all of the fract water was removed caused the shale in the formation to swell and make an impermeable barrier. Also, residue from the water could form an impermeable barrier. Thus, the failure to withdraw the water had a "very adverse effect and how much I can't tell, but I think it had a very adverse effect."
The defendant presented evidence that the operation to recover sand fracturing material was properly done and that the reason the Fuller Estate No. 1 well was expected to produce less than the Riser well was caused by difference in porosity and feet of pay (the thickness of the producing sand). Henry C. Coutret, a consulting petroleum engineer who specializes in reservoir engineering, was of the opinion that the data on the Fuller No. 1 well revealed no evidence that it was damaged while shut in. In his opinion, the Fuller well is a poorer producer than the Riser well due to the lesser thickness of the sand and its lower permeability.
Randall Lewis, a petroleum engineer employed by Franks, supervised the sand fracturing job. It was his opinion that the sand fracturing job was properly completed and that the shutting in of the well did not damage the overall production of the well. Fred Plitt, senior vice president and general manager of Franks, was accepted by the court as an expert in petroleum engineering. He was also of the opinion that the Fuller No. 1 was sufficiently cleaned up before being shut in.
Likewise, Kinney Brookings, a consulting geologist who was accepted as an expert in petroleum engineering, testified that the reason for the difference in expected production between the Riser and Fuller wells was the permeability and porosity attributable to each well.
There was sufficient evidence presented to justify the jury's finding that the cause for the difference in production between the Riser and Fuller well was not the manner in which Franks operated the well but the unique geological characteristics of each well. Hence, we cannot say that the jury was clearly wrong in its finding.
PRUDENT OPERATIONWELL SITELOSS OF HAY PRODUCTION
The plaintiffs also contend that the jury was wrong in denying them an award for loss of hay production and erosion due to the defendants' failure to properly restore the well site to its original condition. Plaintiffs and defendants presented conflicting testimony as to the amount of land required by defendant to conduct oilfield operations. Defendants are presently using approximately one and a half acres. Plaintiffs contend that the defendants are using more land than necessary and thereby preventing the plaintiffs from growing hay on that land. Additionally, they claim that the defendants have failed to properly *1028 restore the well site and that this lack of restoration has caused erosion.
A lessee's obligation is to "... maintain and restore the premises in the condition he found them subject to his rightful use, and where he has damaged the property it is his duty to appropriately remedy the condition brought on by his use of the lease." Smith v. Schuster, 66 So.2d 430 (La.App. 2d Cir.1953); Broussard v. Waterbury, 346 So.2d 1342 (La.App. 3d Cir.1977).
Most of the evidence presented centers on the size of a reserve pit located near the well. Basically, plaintiffs contend that the pit is larger than necessary and the defendants contend that the size of the pit is reasonable.
Ray Storms was of the opinion that the pit was far too large for the needs of the well. The water production from the well was small and the pit would hold up to 20,000 barrels of liquid. He was also of the opinion that the pit was larger than needed for an "unload" operation. An unload operation occurs when the well pressure goes down and the producer has to clean the well of excess water. In doing this, gas is allowed to escape and is burned, creating a large flare at the end of the pipe coming from the well.
Employees of Franks testified that the pit was necessary for continued operations and was not unreasonable when compared with pits used at other well sites. Additionally, a reserve pit had already been filled in and approximately half of the original well site had been restored to its original condition.
Again, the factual determination of the jury is well-supported by the evidence. While evidence was presented that the size of the pit was unreasonable, evidence was also presented that the pit was necessary and its size was not unreasonable. Determinations of credibility and weight are left with the factfinder. Robertson v. Young, 479 So.2d 1083 (La.App. 3d Cir.1985), writ denied, 481 So.2d 1354 (La.1986). Therefore, we uphold the determination of the jury that the plaintiffs are not entitled to recovery for loss of hay production, erosion, or site restoration.
PAYMENT OF ROYALTIES
Plaintiffs' next contention is that the jury erred in finding that Franks paid royalties due for condensate within thirty days after notice and that Franks provided plaintiffs with a reasonable cause for nonpayment within thirty days after notice. Plaintiffs argue that payment was not made, entitling them to damages and attorney's fees.
In order to gain relief for the failure to make timely or proper payment of royalties, a mineral lessor must give his lessee written notice of such failure as a requisite to a judicial demand for damages or dissolution of the lease. LSA-R.S. 31:137. The lessee has thirty days from receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. Whether the lessee pays the royalties due or states a reasonable cause for nonpayment within the thirty day period in response to the required notice determines the remedies available to the lessor. LSA-R.S. 31:138. LSA-R.S. 31:139 and 31:140 provide the remedies under the varying circumstances.[3]
*1029 Mrs. Johnny Huddleston, manager of the Land Department of Franks Petroleum, Inc., testified that the condensate produced by Fuller Estate No. 1 well was sold to P & O Falco. P & O was to pay Franks who in turn would distribute the money to the various royalty owners. Disbursement of proceeds by P & O Falco is made pursuant to a division order. However, Mrs. Huddleston discovered that nobody had ever signed the division order for Franks and therefore P & O had withheld payment from Franks until the order was signed and delivered to P & O on September 14, 1982.
About the same time Mrs. Huddleston discovered the mistake, the plaintiffs noticed that they were not receiving royalty payments for condensate. The plaintiffs consulted an attorney who sent written notice of default to Franks on September 20, 1982. The plaintiffs received a reply on September 22, 1982 stating that payment for condensate had just been received from P & O Falco and that payment of the past due royalties would be made at the end of September along with the regular monthly royalty checks.
However, plaintiffs testified they did not receive their September royalty checks, for either gas or condensate, by the first of October. Regular checks, including gas and condensate, were received at the end of October and monthly thereafter, but plaintiffs returned those checks received after filing suit. Condensate royalty for the several months from March 1982 to September 1982 remains due.
The notice procedure was adequately followed by the plaintiffs herein. The question is whether payment was timely made.
The resolution of this issue centers on the factual determination of whether the plaintiff received payment for past due royalties, as demonstrated by defendant's circumstantial evidence that the checks were mailed, or whether, as plaintiffs testified, they never received the checks.
Each of the three plaintiffs testified that they received checks prior to September of 1982 for royalties due on the gas produced by the Fuller Estates Well No. 1. In September of 1982, they received no checks at all. Beginning with October of 1982 they received checks representing the monthly amount due for gas and condensate royalties. However, these checks were returned to Franks as they were received after suit had been filed.
Various employees and agents of Franks testified that the usual office procedure for disbursement of checks was followed in having checks sent to the Fullers in response to their demand letter. However, no employee could affirmatively testify that they actually placed any of the plaintiffs' checks in the mail.
Mrs. Huddleston testified that she passed on the needed information to the Accounting Department in order to have the Fuller's checks mailed to them. Harold Tucker, who handles the disbursement of royalty checks at Franks, acknowledged receipt of a copy of a demand letter and Mrs. Huddleston's response. It was decided that the best method to handle disbursement of the condensate royalty was to include the amount with the usual royalty disbursement at the end of the month.
Franks has its checks written by Statistical Service Company of Shreveport, Louisiana. *1030 Statistical Service Company is a data processing service that uses its computers to determine the amount of royalties due each individual. The computers automatically write a check, including a carbon copy, addressed to the individual. Carbon copies of plaintiffs' checks were produced at trial. The computers have each royalty owner listed by code number and the percentage of the overall production attributable to each royalty owner. Each month Franks sends Statistical Service Company the total amount of production. That figure is then fed into the computer which then determines the royalty due to each royalty owner. It was determined that the following amounts were due: $624.07 to Charles Fuller; $624.09 to George James Fuller; and $1,248.17 to Gennett Day. Morris Lewis, Jr., owner of Statistical Service Company, testified that he received all of the information necessary in order to make out the checks to the Fullers for September of 1982. This was evidenced by the documents presented into evidence by Franks which contained the requisite information and a stamp issued by Statistical Service Company showing that they received that information.
Once Statistical Services prints the checks, the checks are picked up for Franks by Andrew Moore, Jr. The checks and the carbon copies are separated and sent to Mr. Corley, head of the Accounting Department, for review. They are then run through a signature machine and stuffed into envelopes. These envelopes contain "windows" which allow the address printed on the check to be seen. According to Franks' employees, approximately 4,000 checks are mailed each month. All 4,000 are handled at one time and, therefore, the employees did not remember handling any one specific check. However, all employees connected with the disbursement of checks testified that the checks for the month of September, 1982 were handled in the usual manner and deposited with the United States Post Office.
Testimony was presented that 24 checks in a series, including the checks to the Fullers, were never paid by the bank on which they were written. Several royalty owners testified that they informed Franks that their check for September of 1982 was not received and that Franks issued a stop order on those checks and reissued checks to them. Their checks were included in the series of 24 checks never cashed.
The jury found that defendants provided plaintiffs with a reasonable cause for nonpayment and paid the royalties which were due to the plaintiffs. The finding of the jury that defendants stated a reasonable cause for nonpayment within thirty days of the notice is clearly wrong. In response to the notice of nonpayment, Franks acknowledged that payment had been received from P & O Falco and stated that payment would be forthcoming. The response did not purport to state any reasonable cause for not paying condensate royalty within the thirty day period, but on the other hand, assured that payment would be made.
We find that the jury also erred in determining that the defendants paid plaintiffs the royalties due. Evidence presented by the defendant was adequate to raise the presumption of due receipt of a communication through the mail. Stewart Brothers v. Brewer, 177 La. 389, 148 So. 657 (1933); Ottermann v. Ganus, 455 So.2d 1385 (La. 1984); Di Rosa v. Bosworth, 225 So.2d 42 (La. App. 4th Cir.1969). However, that presumption was adequately rebutted by testimony presented by defendants and plaintiffs.
All three plaintiffs testified that they did not receive their royalty checks for September, 1982. Additionally, several of Franks' employees testified that over twenty royalty checks mailed at the same time as the plaintiffs' checks were never cashed. These checks were in a series and, because Franks kept the checks in numerical order, could have been lost or misplaced in a single occurrence. Franks had several of the royalty owners come to trial and testify that they never received their checks. Thus, the evidence establishes that Franks followed its normal procedure in preparing *1031 the checks and that either Franks or the U.S. Postal Service lost over twenty of these checks, including plaintiffs' checks.
The jury's finding that Franks paid the royalties due within the thirty day period necessarily includes a finding that Franks mailed the checks. The evidence amply supports that finding. It is not clear, however, whether the jury found that plaintiffs received the checks. Such a finding would be clearly wrong. The plaintiffs testified they did not receive the checks and this testimony is supported with certainty by the fact that a series of checks, which included plaintiffs' checks were not received by other royalty owners. The most logical conclusion is that the checks were lost after being mailed by Franks.
Under the circumstances of this case, even assuming that the checks were mailed by Franks and then misplaced in the mail, such cannot be considered as payment of royalties. The lessors did not receive the checks. After being put on notice of nonpayment in accordance with the statute it was incumbent upon the lessee to assure that payment was delivered to the lessors. Payment could have been made by personal delivery or through registered or certified or other form of mail which would have assured delivery or at least notification of non-delivery. Instead, Franks chose to process these checks in the company's normal procedure of paying royalties along with several thousand other checks without any special attention to these payments which were required to be made within the statutory deadline.
After being put on notice of failure to pay royalty in accordance with the statute, the mere mailing of a check by the lessee pursuant to usual procedures is not sufficient to constitute payment of royalty where the check is not delivered to or received by the lessor.
Payment was not effected within thirty days after notice, nor was a reasonable cause stated for failing to pay within the thirty day period, subjecting the lessee to damages as provided by LSA-R.S. 31:140. Arceneaux v. Hawkins, 376 So.2d 362 (La.App. 3d Cir.1979); Comment following LSA-R.S. 31:137, third from last paragraph.
LSA-R.S. 31:140 provides:
If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause of the original failure to pay royalties. The court may also dissolve the lease in its discretion.
This article provides the court with great discretion in awarding damages and does not mandate that any award be given in excess of the royalties due. Wegman v. Central Transmission, Inc., 499 So.2d 436 (La.App. 2d Cir.1986).
In awarding damages we consider that Franks' original failure to pay was an act of neglect or oversight and was not willful. Also, the evidence establishes that Franks made a good faith effort to pay within the thirty day period after plaintiffs' notice of default. Thus, damages should be limited to compensation for the loss actually suffered. We decline to award plaintiffs damages of double the amount of royalties due or dissolution of the lease. We award plaintiffs the amount of royalties due plus interest thereon from the date due, together with a reasonable attorney's fee which we fix at $1,500.00.[4]
*1032 Obviously, the greatest part of the attorney's services rendered in this case were directed toward seeking cancellation of the lease and damages. When plaintiffs did not receive a royalty check within 30 days after notice, it was reasonable for them to obtain an attorney to file suit, and they are entitled to recover a reasonable sum for their expense in this regard. Afterwards, however, payment of the past due royalties could have easily been accomplished as it was by other royalty recipients who did not get their September checks, except for plaintiffs' position of not accepting any royalty payments after suit was filed. Plaintiffs need not be compensated for any attorney's fees incurred in pursuit of damages and cancellation of the lease, which the jury and this court find unwarranted. The amount of $1,500.00 should be adequate to compensate for attorney's fees directly related to the nonpayment of the relatively small amount of royalties for the period of only a few months.
For the reasons assigned, the decision of the trial court is reversed in part.
IT IS ORDERED that there be judgment in favor of plaintiff, Charles Milton Fuller, and against defendants, in the amount of Six Hundred Twenty-four and 07/100 ($624.07) Dollars with legal interest from date due until paid, and Five Hundred Dollars ($500.00) attorney's fees.
IT IS FURTHER ORDERED that there be judgment herein in favor of plaintiff, George James Fuller, and against defendants in the amount of Six Hundred Twenty-four and 09/100 ($624.09) Dollars with legal interest from date due until paid, and Five Hundred Dollars ($500.00) attorney's fees.
IT IS FURTHER ORDERED that there be judgment herein in favor of plaintiff, Gennett Enis Fuller Day, and against defendants, in the amount of One Thousand Two Hundred Forty-eight and 17/100 ($1,248.17) Dollars with legal interest from date due until paid, and Five Hundred Dollars ($500.00) attorney's fees.
IT IS FURTHER ORDERED that all other demands of the plaintiffs be rejected.
All costs of this proceeding are assessed one-half to the plaintiffs and one-half to the defendants.
REVERSED IN PART AND RENDERED.
NOTES
[1] Added as defendants were Thomas A. Durham and Beverly Bain Durham, the original lessees who assigned their lease to Bass Partnership and Franks, and the following as Franks' assignees: John Franks and Alta Vacocu Franks, Carl R. Corley and Peggy Harris Corley, A.T. Dickerson and Temple Legrone Dickerson, Fred H. Plitt and Jane Brooks Plitt, William E. Gerratt and Kay Jones Gerratt, H.D. McChesney, Jr. and Francis Duffey McChesney, and William T. Hall and Virginia Anderson Hall.
[2] The jury's verdicts on special interrogatories were as follows:

1. Do you find that the plaintiffs gave the defendants written notice of failure to pay royalties?
Yes.
2. If your answer to No. 1 is "Yes", answer the following:
A. Did the defendants provide the plaintiffs with a reasonable cause for nonpayment within thirty (30) days of the notice?
Yes.
B. Did the defendants pay the royalties which were due to the plaintiffs within thirty (30) days of the notice?
Yes.
* * * * * *
4. Do you find that the plaintiffs are entitled to damages for loss of hay production?
No.
* * * * * *
6. Do you find that the plaintiffs are entitled to recover an amount to restore the reserve pit or any portion of the drill site?
No.
* * * * * *
8. Do you find that Franks has operated the Fuller Estate No. 1 Well as a reasonably prudent operator?
Yes.
9. Do you find that the Fullers are entitled to have the oil and gas lease dissolved in its entirety?
No.
10. Do you find that the Fullers are entitled to have the oil and gas lease dissolved only as to condensate produced from the well?
No.
[3] The applicable provisions of the Mineral Code provide:

§ 137. Nonpayment of royalties; notice prerequisite to judicial demand.
If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.
§ 138. Required response of lessee to notice.
The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages.
§ 139. Effect of payment in response to notice.
If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.
§ 140. Effect of nonpayment in response to notice or failure to state cause therefor.
If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion.
[4] The result we reach in this case would be the same even if we concluded that the mailing of the checks constituted payment under the applicable provisions of the Mineral Code. If payment is made within the thirty day period, and the original failure to pay was the result of mere oversight or neglect, as is the case here, damages are limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor. LSA-R.S. 31:139, last sentence. Here, the lessors did not make demand for payment of interest in their written notice which triggered the thirty day period. However, the petition demanded payment of interest, meeting the requirement of written demand therefor. Defendants have not paid or tendered payment of interest, entitling plaintiffs to a reasonable attorney's fee. Thus, even if it be determined that the lessees made payment within the thirty day period, there would be judgment against them for the amount of royalties due, interest thereon, and reasonable attorney's fees.