ItSAUNDERS, Judge.
These two suits were instituted on behalf of plaintiffs who are the land owners within the confines of the P.L. Lawrence No. 2 Well. The plaintiffs, who are the mineral interest owners in this production unit, have sued the defendant, Amoco 12Production Company, for interest, double royalties, and attorney’s fees due to the alleged unreasonable delay in the payment of royalties.

FACTS

In the latter part of 1987, the defendant, Amoco Production Company (hereinafter Amoco), completed the P.L. Lawrence No. 2 Well in Crowley, Louisiana. The Louisiana Department of Conservation established the NARA-SUA unit, effective March 23, 1988, to regulate the production from this well. In July 1987, before the initiation of production, the defendant began compiling information for a final unit plat and division order for the unit to determine the interest of each mineral rights owner, which was based on their ownership of surface acreage.
Between March 11, 1989, and December 19, 1989, plaintiffs, Lorraine L. Bolyard, Michael and Katherine Habetz, Thomas and Betty Fortson, Thomas Fortson, Jr., Rebecca Lawhun, Donald Hilliard, Leroy and Grace Beard, Delores Dugan, Donald and Deanna Hargrave, Findley Hilliard, Paul Butaud, Wilber and Ena Leleux, James and Rita Trumps, Noah and Ruby Monceaux, and An *1178 thony and Janet Douget, sent written demand letters to the defendant for payment of royalties. Within the 30 day statutory limit provided by the mineral code, the defendant made initial royalty payments to all plaintiffs. With regard to three plaintiffs, Trumps, Monceaux and Douget, the initial payment was only a part of what was owed. Thereafter, the defendant continued to make royalty payments to plaintiffs on a timely basis until production of the P.L. Lawrence No. 2 Well ceased. The defendant also made up the partial payments owed to Trumps, Monceaux and Douget.
Robert Frost, the defendant’s land survey- or, testified that he prepared the unit plat of the P.L. Lawrence No. 2 Well. He began in April of 1988 by reviewing abstracts and compiling an abstract sketch. In late June and early July 1988, he went|3with a crew to conduct a field survey, and completed his calculations and data compilation in September 1988. By October 1988, he had spoken with the attorneys involved in the curative work and in November 1988, received the original title opinion from them for an area known as Stewartville. By December 1988, he had completed his work in the Stewart-ville area involving many conveyances of rights-of-way and expropriations.
The defendants’ lead broker, James “Pittman” Hesterly, who worked on the P.L. Lawrence No. 2 Well, testified that this was the most complex unit he had ever worked on in his seventeen years of experience. Mr. Hes-terly testified that the unit consisted of 2,000 royalty owners and 234 tracts of land in the 320 acre unit. Also, within the unit were 12 to 15 subdivisions and land on which Highway 100 is located, owned by the State of Louisiana, Interstate 10, which is owned by the federal government, and Parkersons Avenue, parts of which are publicly owned and parts of which are privately owned. Due to the complexity of the unit, he stated that he worked full-time approximately 10 to 12 hours a day, 6 to 7 days a week.
Because of the amount of curative work involved, 10 to 12 sub-brokers were also hired. Mr. Hesterly testified that there were no restrictions placed by the defendant on the cost or the manpower necessary to complete the job as expeditiously as possible. Normally, curative work takes between 30 and 60 days. In this case, it took two years. At its completion, the Stewartville abstract alone consisted of 6,000 pages.
Scott Bailey, a 15 year employee for the defendant, testified that since the unit was so complex, the defendant deviated from the usual practice of curing the title of an entire unit before placing any of the owners in pay status. In this instance, the defendant paid the mineral interest owners on a “piecemeal” basis as different title | opinions were finalized. In April 1989, over one year after the ereation of the unit, plaintiffs commenced making demand for the payment of royalties. The defendant testified that, although payment on these demands creates a risk of overpayment or payment to the wrong party, the defendant chose to comply with the demands received.
An employee of defendant’s in its accounting department, Ms. Jennie Gard, stated that the plaintiffs were placed in pay status as soon as possible. Her records reflected that the three plaintiffs, Monceaux, Trumps and Douget, received initial payments, which included the current month’s oil production but not royalties for the prior month’s production. Subsequent royalty checks sent to these plaintiffs included all prior months’ royalties. The plaintiffs conclude that the defendant’s delay in payment is unjustified and was a willful withholding of royalty payments without reasonable cause.

DISCUSSION

The plaintiffs first assert that the lower court erred in not finding that the inordinate delays in making royalty payments to the plaintiffs by the defendant, Amoco, were unjustified and amounted to willful withholding of royalty payments without reasonable cause.
In determining whether or not the delays were willful and unjustified, the trial court had to weigh all the factual findings and credibility of witnesses in determining this matter. The trial judge’s factual findings are subject to the manifest error rule under which the reviewing court does not decide *1179 whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
|sThe trial judge applied La.R.S. 31:137 through 31:139 in rendering his decision. La.R.S. 31:137, 31:138, and 31:139 reads as follows:
See. 137:
If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.
Sec. 138:
The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause of nonpayment within this period has the following effect on the remedies of dissolution and damages.
Sec. 139:
If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney’s fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on, the royalties computed from the date due, and a reasonable attorney’s fee if such interest is not paid within thirty days of written demand therefor.
Applying the above law to this case, we note that the plaintiffs made demands upon the defendant for payment of royalties. These payments were made by the defendant on a “piecemeal” basis. In all instances, payment of royalties were made to the plaintiffs within the 30 day allotment under La. R.S. 31:138. The exception being to plaintiffs, James Trumps, Noah Moneeaux and Anthony Douget, whose demand was made on November 20, 1989, and only a partial payment was made within the 30 day period. It is noted by this court that in the following months, additional monies were paid to these three plaintiffs which represented the royalties which were due on the date of demand against Amoco on November 20,1989.
| fiThe defendant argues that all payments were made on a “piecemeal” basis as a result of the final survey plat not being completed at the time of demand. It is argued in defendant’s brief that it is a custom of the industry that royalties are not paid until the completion of the final survey plat so as to insure that all parties are paid their fair and requisite amounts.
In the case of Canik v. Texas International Petroleum Corp., 308 So.2d 453 (La.App. 3 Cir.), writ denied, 310 So.2d 850 (La.1975), which was decided prior to the effective date of the mineral code, this court found that there was no willful intent by the defendant in waiting four months while the necessary title work was completed before paying royalties.
In the case sub judice, Amoco paid royalties after a written demand was provided to them, prior to the completion of the final survey plat. We note that there was an extensive delay in the finalization of the survey plat, however, because of various circumstances and the massive number of land tracts involved, we feel that the trial judge was correct in holding that this delay was neither willful nor unreasonable. Knighton v. Texaco, 762 F.Supp. 686 (W.D.La.1991); Fuller v. Franks Petroleum, Inc., 501 So.2d 1024 (La.App. 2 Cir.1987); Succession of Miller v. Moss, 479 So.2d 1035 (La.App. 3 Cir.1985), writ denied, 484 So.2d 135 (La.1986); Bailey v. Franks Petroleum, Inc., 479 So.2d 563 (La.App. 1 Cir.1985); Fawvor v. U.S. Oil of La., 162 So.2d 602 (La.App. 3 Cir.1964).
As to the Monceauxs, Dougets and Trumps, they made demand on the defendant on November 20, 1989. The defendant paid the plaintiffs much less than they were enti- *1180 tied to relying on the complexity of the plat as an excuse. The record shows that the information needed to properly pay the plaintiffs was in the defendant’s custody. The defendants had all the required information to make proper payment yet failed to |7do so. By their own admission, Amoco had a capable staff and the requisite information in their computers to make proper payment. We feel that it is not within the bounds of our discretion to allow the defendant to hide behind the excuse of complexity for such an extended period of time. The duty owed to their lessors, the plaintiffs, was breached by this improper payment. La.R.S. 31:189 states that the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney’s fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. We therefore award double royalties to the Mon-ceauxs, Dougets and Trumps for the sixty days following demand with interest on that amount and attorney fees in the amount of $1,000.00 for the appeal of these three plaintiffs, noting that $5,000.00 has already been awarded by the lower court for attorney’s fees.
Plaintiffs also assign as error the lower court’s finding that the date due for the commencement of interest was from the date of demand.
The lower court awarded interest to the plaintiffs from the date of the demand for payment to the date of payment, a period of thirty days.
We have previously held in Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3 Cir.1982), that on debts arising ex contractu, interest is recoverable from the time such debts become due. Also, La.R.S. 31:139 dictates that interest on the royalties shall be paid from the date due.
In the case sub judice, the lower court ordered that the interest be paid from the date of demand. This ruling by the lower court that interest should run from date of demand is clearly erroneous as the demand letter mandated by La.R.S. 31:137 is triggered by failure to make timely payments. Therefore, we reverse the trial court’s | ^holding and award interest to be paid on the royalties to the plaintiffs from the date due.
La.Civ.Code art. 9 states:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
We now turn to the question of what is the “date due.” In Liquidation of Canal Bank and Trust Co., 211 La. 803, 30 So.2d 841, 852 (1947), the Louisiana Supreme Court stated “... interest is a mere incident of the principal debt.” The principal debt in this situation is the royalties. Royalties are the payment from the lessee “oil production company” to the lessor “land owner” for the oil extracted from the lessor’s property. Therefore, royalties to the land owners are due from the time the product is produced. Ergo, when oil production companies extract oil or minerals from the ground and sell on the open market, interest begins to run.
In the case sub judice, first production was in the month of April 1988, with full online production commencing in July 1988. We therefore reverse the holding of the lower court and award interest on royalties from the date of full online production, being July 1, 1988. Inasmuch as the interest was not paid within thirty (30) days of written demand, we award attorney’s fees of $2,500.00 in accordance with La.R.S. 31:139.

DECREE

We affirm the holding of the trial court that payment was made pursuant to the statutory perimeters, that being within the thirty days required by law after written demand. However, as to the Monceauxs, Dougets and Trumps, we award double royalties for the sixty days in question pursuant to this opinion and also interest and $1,000.00 attorney’s fees.
_JgAs to the issue of when interest is due, we hold that date to be July 1988, the month full online production began. We therefore award interest to all plaintiffs in this matter *1181 on their respective royalties to begin July 1, 1988.
We further award attorney’s fees in the amount of $2,500.00 as per La.R.S. 31:139 for failure of defendant to pay royalties within thirty (30) days after demand. Costs are assessed to defendant, Amoco Production Company.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
AMY, J., concurs in part and dissents in part and assigns reasons.