HALL, Judge.
Louis A. Di Rosa as holder and payee of a promissory note brought suit against William P. Bosworth, Jr., the maker thereof, for the full amount of the note plus interest and costs. The note sued on is in the principal sum of $150,000.00, is dated November 30, 1965 and is made payable to Lewis E. Johnson and Louis A. Di Rosa jointly at New Orleans, Louisiana, in equal annual installments of $10,000.00 “beginning December 1, 1966 for ten years and balance due on December 1, 1976.” The note bears interest at 6% per annum from maturity until paid and provides that failure to pay any installment promptly when due shall immediately mature all remaining installments “ipso facto and at once, without notice or demand.”
Di Rosa alleges in his petition that on November 30, 1966 he acquired the interest of Lewis E. Johnson in the note by written assignment and that the defendant was notified accordingly. The petition further alleges that the first installment of $10,-000.00 which became due on December 1, 1966 was not paid thus maturing the entire note.
Bosworth defended on the ground that the parties had agreed that payment of the installment could be mailed on December 1, 1966 and that he mailed the payment to Di Rosa in accordance with the agreement and that it was received by Di Rosa.
The Trial Judge held that the defendant failed to carry the burden of proving his defense and rendered judgment in favor of Di Rosa for $150,000.00 plus 6% interest thereon from December 1, 1966 until paid and for all costs. Bosworth appealed.
Appellant specifies as error that:
1) The Trial Court erred in failing to find that the parties agreed, on December 1, 1966, that payment of the installment due on that date could be made by mail.
2) The Trial Court erred in failing to find that payment of the December 1, 1966 installment was mailed and received in accordance with the agreement between the parties.
It is undisputed that on November 30, 1966 Di Rosa addressed a letter to Bos-worth calling attention to the terms of the note and notifying him that he had acquired the interest of Lewis E. Johnson therein, “as per the enclosed assignment” and calling upon Bosworth “to make said payments only to me in accordance therewith.” The letter was received in Bos-worth’s office on the morning of December 1, 1966, the day the first installment was due. Bosworth was apprised of the contents of the letter by his office manager that morning. It is also undisputed that about 3 P.M. on the afternoon of December 1, 1966, Bosworth reached Di Rosa by telephone and a conversation took place between them. There are two diametrically opposed versions of what was said during this conversation.
Bosworth’s version of the conversation is shown by his testimony as follows:
“Q. Mr. Bosworth, during the course of the conversation what did you say to Mr. Di Rosa and what did he to you?
“A. The gist of the whole thing, there was no rush to make the payment, that I could mail it to him.
“Q. Why did you telephone him on that afternoon ?
“A. I telephoned and found out how I should make the payment.
“Q. By mail or delivery?
“A. Right. Or where I should make the payment.
*44 “Q. And what did he say to you?
“A. He said there was no rush about it. I said, ‘Can I mail it?’ He said ‘Mail it.’ ‘I’ll make it to you.’ He said ‘That would be all right.’
“Q. Did he say anything about the length of time that would be required for payment that you could recall ?
“A. No he did not. He was very very nice to me on the ’phone.
“Q. Mr. Bosworth, what representation, if any, did you make to Mr. Di Rosa when you learned you had to get payment to him ?
“A. I told him I would mail it to him.”
Di Rosa testified as follows relative to the telephone conversation:
“Q. What did he say to you and what did you say to him on that occasion?
“A. He said he needed a couple of days.
“Q. You remember that being his exact words ?
“A. No, I don’t, but the gist of the conversation was he needed a couple of days. I told him I wanted a check on the first and dated the first. He told me either he would bring it over himself that afternoon or have Bob Lowry to bring it over.
“Q. Is it possible that he could have asked for more than a couple of days?
“A. No, sir.
ífc * * :ji * *
“Q. When you had this conversation with Mr. Bosworth, Mr. Di Rosa, did he give any reason for the time that you say he asked for?
“A. No sir, he didn’t tell me. He didn’t have a chance to.
“Q. Why didn’t he have a chance?
“A. I wanted it that day. It was a note that wasn’t drawing interest. I was paying interest on money that I had that represented part of a loan on that note.”
No other testimony was offered concerning this telephone conversation which would support the contention of either of the litigants and it is impossible for us to determine which version of the conversation is true. It is clear however that the first installment of the note was not paid on its due date, December 1,1966.
Appellant did not defend on the basis that he made timely payment as required by the note sued upon, but defended on the basis that there was a verbal agreement over the telephone modifying the time and manner of payment. The burden rested on Bosworth to prove this defense.
Bosworth testified that he had telephoned Di Rosa from his office in the Governor House Motor Hotel of which he was the proprietor and that about half an hour after their conversation he made out two $5,000.00 checks payable to Di Rosa, one drawn on the Bank of New Orleans and the other drawn on the Hibernia Bank; that he wrapped the checks in a blank piece of paper and enclosed them in an envelope addressed to Di Rosa; that his return address was placed on the envelope and that he placed a stamp thereon and walked from his office to the hotel desk in the lobby to drop them in the mail receptacle provided for guests of the hotel; that when he got to the lobby he ran into General Raymond F. Hufft, an old friend, who was looking for him; that they engaged in a short conversation and that General Hufft saw him holding the envelope addressed to Di Rosa in his hand.
General Hufft testified that he saw Bos-worth in the hotel lobby and asked him what he was doing, to which Bosworth replied he was going to mail a check “to that so-and-so Di Rosa for $10,000.00.” The general testified that he asked Bos-worth “What are you mailing him a check for?” and that he replied “Never mind. *45 I guess I’m screwed again.” General Hufft testified he saw a stamped envelope in Bos-worth’s hand addressed to Louis Di Rosa and bearing Bosworth’s name or initials in the return address area. The general left after about five minutes conversation with Bosworth. He did not see what was in the envelope nor did he see Bosworth place it in the mail receptacle.
The record shows that the mail receptacle in the lobby of the Governor House is not a government mail box but merely a depository maintained by the hotel for the convenience of its guests. Bosworth testified that in the usual course of business its contents are picked up by a bell boy every hour or so and taken across the street and deposited in a United States mail box situated in the Claiborne Towers.
On Friday, December 2, 1966 the Governor House Motor Hotel collapsed. This was widely publicized on the television, radio and in the newspapers.
On Monday, December 5, 1966 Di Rosa filed this suit. Bosworth testified that when he learned of the suit he called Di Rosa on the telephone and told him he had mailed him two checks, and that Di Rosa told him he was “pipe dreaming.” Bos-worth testified that he told Di Rosa of his trouble with the hotel collapsing and that he should withdraw his law suit to which Di Rosa replied “You’re going to make all kinds of money on insurance and I’m going to collect the whole $150,000,00 right now.”
Di Rosa denies having spoken to Bos-worth -at any time since their telephone conversation of December 1, 1966.
Assuming arguendo, but not deciding, that the parties had agreed that it would be satisfactory for Bosworth to mail the payment to Di Rosa on the afternoon of December 1, 1966, has Bosworth sustained the burden of proving that he did so P
Bosworth gave no direct testimony that he ever placed the envelope containing the checks in the mail depository at the hotel and no one testified that he saw Bos-worth do it although General Hufft was with him for at least five minutes. Moreover the record is completely devoid of any testimony that the letter, if it existed, was ever placed in a United States mail box, or that the customary procedure for taking the mail over to the Claiborne Towers was ever carried out on December 1, 1966 or any time thereafter. All we have is Bosworth’s testimony that an unnamed, un-produced employee in the normal course of business ordinarily brought the mail from the hotel to the Claiborne Towers mail box.
While there is a presumption of receipt of mailed matter by the addressee the presumption does not arise until there is proof of actual mailing in a mail box or other depository under the control of the United States Post Office Department.
Corpus Juris Secundum states the rule as follows:
“In order to support a presumption of receipt of mail matter, there must be satisfactory proof that it was duly mailed,92 and there must be shown all those things which are necessary to impose on the government officers and employees' the duty of transmitting and delivering the matter.93 Such proof need not consist of direct and positive testimony to the ultimate fact of mailing,94 and proof of the existence of an office practice or custom in the mailing of letters, together with proof that the custom was followed in the particular instance, may constitute sufficient evidence of mailing to support a presumption of due receipt.95
“Where proof of an office routine or business practice is relied on to establish a mailing, according to the majority rule, there must be corroborating circumstances to support the inference that the custom has been carried out.95-5 Thus, the person who is claimed to have mailed the letter ordinarily must appear 96 and testify that he complied with the custom and performed his duty; 97 but there is *46 authority to the contrary.98” 31A C.J.S. Evidence § 136(c), page 294.
On the question of proof of mailing by showing office custom American Jurisprudence states:
“§ 1119. Business or office custom or usage of sender.
“The authorities are not agreed as to what evidence of a private business custom or usage is sufficient to prove the mailing of a letter. Obviously, in an office handling a great deal of correspondence, one can very seldom remember the fact of mailing any particular letter, so the rule has become established in many jurisdictions in such instances that proof of mailing may be made by show- ' ing an office custom with respect to mailing and compliance with the custom in the specific instance.11 In most instances, however, it is held that proof of a usage in the sender's office whereby letters deposited in a particular place are taken by an employee and mailed by him is not sufficient of itself to establish the fact that a letter so deposited was mailed, in the absence of proof showing a compliance with the custom.12
“In some jurisdictions the view is adopted that evidence of a custom or usage in a business office of placing the mail in a certain receptacle, or delivering it to a particular employee to be later deposited in the mail, is sufficient to establish the fact of mailing, without the further testimony of the particular employee whose duty it was to do so deposit it that he performed such duty.13
“The presumption of the receipt of a letter arising from evidence -of compliance with the usual custom in mailing such letters is strengthened when the envelope bears a notice requesting that it be returned to the sender if not delivered within a specified time and it appears that the letter was never returned.14” 30 Am.Jur.2d page 284.
We know of no Louisiana case directly in point. Appellant cites Sawyer v. Central Louisiana Electric Company, Inc., La. App., 136 So.2d 153, but in that case all employees who handled the mail were produced including the employee who carried the mail to the Post Office.
Following the general rule as stated in Corpus Juris Secundum and American Jurisprudence we are of the opinion that the presumption of receipt cannot be applied for lack of proof of mailing.
We come back to the question of the credibility of the parties. Was there an agreement between the parties modifying the terms of payment of the note ? Bos-worth bore the burden (1) of proving such an agreement and (2) that he performed all of his duties under such agreement. Since there is nothing in the record which would enable us to determine that his testimony is more credible than that of Di Rosa he has not sustained the burden of proving the agreement and therefore the terms of the note prevail. On the other hand assuming arguendo that there was an agreement between the parties that payment could be mailed to Di Rosa, Bosworth has not in our opinion sustained the burden of proving the checks were in fact placed in the United States mail.
Bosworth has filed a Motion to Remand on grounds of newly discovered evidence supported by an affidavit by Mr. Lewis E. Johnson who was the original payee on the note. The five page affidavit consists entirely of a recitation of affiant’s difficulties with Di Rosa in connection with certain joint ventures in which he, Di Rosa, and Bosworth had engaged and which difficulties are the subject matter of a suit filed by him against Di Rosa in the Civil District Court for the Parish of Orleans. One of affiant’s allegations against Di Rosa is that on November 30, 1966 he was induced by threats to assign to Di Rosa his interest in the $150,000.00 note herein involved. The only portion of the affidavit which could possibly have any reference to this suit is the following:
“ * * * affiant asked Di Rosa ‘why did you do this to me?’ Di Rosa answer *47 ed that he needed money badly, that he had to take advantage of someone, and that Johnson was the nearest victim. Gloating, Di Rosa then stated that, moreover, he knew how to collect the whole 150,000.00 from Bosworth” (Emphasis supplied)
The only purpose of a remand based on this affidavit would be an attempt to destroy Di Rosa’s credibility. Assuming arguendo, as we have done, that Bosworth’s version of the telephone conversation of December 1, 1966 is true and that Di Rosa’s version thereof is false, Bosworth still has failed to prove that he complied with the purported agreement by mailing the checks. The evidence sought to be adduced on remand would not change the result. The Motion to Remand is denied. See Gaines v. Standard Acc. Ins. Co., La.App., 32 So.2d 633, 642; Granata v. Simpson, La.App., 171 So.2d 284.
For the foregoing reasons the Motion to Remand is denied and the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Motion to remand denied. Judgment affirmed.