VERONICA BRAGGS

VERSUS

SIMEON DICKERSON AND
JON A. GEGENHEIMER,
JEFFERSON PARISH CLERK OF COURT

NO. 22-CA-361

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 830-926, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING


August 09, 2022

11:05 am

**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and John J. Molaison, Jr.


**AFFIRMED**
 **JJM**
 **SJW**

**DISSENTS WITH REASONS**
 **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Assistant Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
VERONICA BRAGGS
   Stephen M. Gele
   Andre M. Stolier

COUNSEL FOR DEFENDANT/APPELLEE,
SIMEON DICKERSON
   William Peter Connick
   W. J. LeBlanc, Jr.

**MOLAISON, J.**

In this candidate challenge suit, plaintiff/appellant Veronica Braggs appeals the trial court's August 2, 2022 judgment which denied Ms. Braggs' petition objecting to the candidacy of Simeon Dickerson for the office of Jefferson Parish School Board Member - District 5, in the November 8, 2022 election. The trial court ruled that Ms. Braggs failed to prove that Mr. Dickerson should be disqualified as a candidate for Jefferson Parish School Board - District 5. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 22, 2022, Simeon Dickerson filed a sworn Notice of Candidacy with the Jefferson Parish Clerk of Court declaring his intent to run for the office of Jefferson Parish School Board - District 5. In the notice of candidacy, Mr. Dickerson listed his domicile address as 1336 Francis Street, Marrero, Louisiana. Mr. Dickerson also certified, among other things, that:

> 9) [i]f I am a candidate for any office other than United States senator or representative in congress, that for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.

Mr. Dickerson signed and dated the notice of candidacy form before a notary public on July 22, 2022.

Plaintiff Veronica Braggs, a registered voter and qualified elector in the Parish of Jefferson, filed the instant suit seeking to disqualify Simeon Dickerson as a candidate for Jefferson Parish School Board - District 5. Pursuant to La. R.S. 18:492, on July 27, 2022, Ms. Braggs filed an objection to Mr. Dickerson's candidacy alleging that Mr. Dickerson "does not meet the qualifications for the office he seeks in the primary election." Ms. Braggs went on to state that Mr.

Dickerson did not meet the qualifications for the office he seeks in the following aspects:

> B. Defendant, SIMON DICKERSON, listed his domicile address as 1336 Francis St., Marrero, Louisiana and certified at line #4 that he was a duly qualified elector of Jefferson Parish at said address, when, upon information and belief, he is domiciled at 3217 Tulip Court, Marrero, Louisiana, 70072.

> C. Defendant, Simeon Dickerson, therefore has not been domiciled in the district for a period of one year prior to the time that he qualified for the office of Jefferson Parish School Board Member – District 5.

> D. Defendant, SIMEON DICKERSON, is currently married to Bianca Shantrice Davis. The date of their marriage was December 11, 2017. Defendant SIMEON DICKERSON, has lived and resided continuously with Bianca Shantrice Davis for at least the past year at 3217 Tulip Court, Marrero Louisiana. The couple has clearly established 3217 Tulip Court as their matrimonial domicile.

> E. The address of 3217 Tulip Court, Marrero, Louisiana 70072 is not within the boundaries of District 5 of the Jefferson School Board District.

Ms. Braggs further alleged that although Mr. Dickerson declared under oath that "for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return or both," he "has not filed the required state tax forms for the years 2020 and 2021." Ms. Braggs alleged that pursuant to La. R.S. 18:463(A)(2), Mr. Dickerson was required to file the required state tax forms for the last five years and his failure to do so is grounds for disqualification.

On August 1, 2022, a hearing was held on the petition objecting to the candidacy of Simeon Dickerson for the office of Jefferson Parish School Board – District 5. At the conclusion of the hearing, the trial court dismissed the petition upon finding that Mr. Dickerson met all requirements to become a candidate for office. This timely appeal follows.

## ASSIGNMENTS OF ERROR

1.  The trial court erred in finding that Dickerson had "filed" his two delinquent tax returns for tax years 2020 and 2021, when he offered no evidence to prove that the LDR had received his tax returns as of July 22, 2022, when he executed and filed his notice of candidacy.

2. The trial court erred in finding that Dickerson was domiciled with the school board district in which he qualified to run, when the evidence showed that Dickerson's residence with his wife had a homestead exemption outside of the district and his voting precinct.

## LAW AND ARGUMENT

The manner of qualifying for an election is set forth in La. R.S. 18:461(A)(1), which provides, in pertinent part: "A person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy..." La. R.S. 18:463 provides, in pertinent part:

A. (2)(a) The notice of candidacy ... shall include a certificate, signed by the candidate, certifying all of the following:

(i) That he has read the notice of his candidacy.

(ii) That he meets the qualifications of the office for which he is qualifying.

\* \* \*

(viii) That all of the statements contained in it are true and correct.

The purpose of the notice of candidacy is to provide sufficient information to show a candidate is qualified to run for the office he seeks. *Trosclair v. Joseph*, 14-675 (La. App. 5 Cir. 9/9/14), 150 So.3d 315, 317. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. *Dixon v. Hughes*, 587 So.2d 679 (La. 1991).

In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492; *Russell v. Goldsby*, 00-2595 (La. 9/22/00), 780 So.2d 1048, 1051; *Trosclair*, 150 So.3d at 317. "The laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy." *Russell*, 780 So.2d at 1051. Although Louisiana law

favors candidacy, once an objector makes a *prima facie* showing of grounds for disqualification under La. R.S. 18:492, the burden shifts to the defendant "to present sufficient evidence to overcome the other party's *prima facie* case." *Landiak v. Richmond*, 05-0758 (La. 3/24/05), 899 So.2d 535, 541-2.

### *Standard of Review*

Appellate courts review findings of fact under the manifest error or clearly wrong standard. *North v. Doucet*, 18-437 (La. App. 5 Cir. 8/1/18), 253 So.3d 815, 818. Issues of law are reviewed simply for legal correctness. *Id*.

### *Tax return issue*

We begin our analysis of this issue by considering whether Ms. Braggs made a *prima facie* case that Mr. Dickerson was untruthful in asserting that he had timely filed his state tax returns for 2020 and 2021. The *prima facie* standard, as applied to election lawsuits, was described by the Louisiana Supreme Court in *Landiak v. Richmond*, 05-0758, (La. 3/24/05), 899 So.2d 535, 541, as follows:

> Under Louisiana's civil law, the "burden of proof" may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a *prima facie* case.

In *Lumar v. Lawson*, 20-251 (La. App. 5 Cir. 8/10/20), 301 So. 3d 1243, 1251, *writ denied*, 20-00994 (La. 8/13/20), 300 So. 3d 868, *reconsideration denied*, 20-00994 (La. 8/28/20), 301 So.3d 31, this Court was specific about what the *prima facie* case needed to establish with regard to a tax claim in a candidacy lawsuit:

> The plain language of La. R.S. 18:492, does not purport to disqualify a candidate for the actual failure to file the required tax returns, or for the failure to file them regularly and in a timely manner, but rather provides for disqualification for the false certification in the Notice of Candidacy that the required tax returns have been filed. Because the ground for disqualification as it pertains to tax returns is the falsity of the candidate's certification on his Notice of Candidacy, and because the Louisiana Administrative Code's "postmark" rule allows for a retroactive "filing" date for tax returns, courts in our state have been faced with election challenge suits, like the one before us, where a challenged candidate has filed her Notice of Candidacy with a

certification that she has filed her required tax returns, after she has belatedly attempted to file past due tax returns by mailing them, but before actual physical receipt of those returns by the intended recipient entity. In these cases, courts are faced with examining the factual circumstances surrounding the mailing of the returns to determine whether the candidate's certification of the "filing" of those returns is truthful.

In the instant case, the trial court stated in the record that it did not find Ms. Braggs had made a *prima facie* case for any of her allegations, which would include the tax issue. As noted above, our standard of review is whether this finding by the trial court was clearly wrong and manifestly erroneous.

At trial, Mr. Dickerson testified that he had filed a federal and state tax return in 2020 and 2021 through his tax preparer, LaTonya Jackson. He believed, based on information from Ms. Jackson, that his return had been delivered. Ms. Jackson similarly testified that she had prepared Mr. Dickerson's tax returns for the previous five years. She confirmed that Mr. Dickerson's state tax returns for 2020 and 2021 were placed in the mail by her on July 14, 2022 by mail, which was over a week before Mr. Dickerson qualified for office. The returns were not sent by certified mail.

Emily Toller, an Assistant Director of the Policy Services Division for the Louisiana Department of Revenue, testified that the department's response to public records request from Ms. Braggs, dated July 27, 2022, does not show that Mr. Dickerson filed state taxes in 2020 or 2021. However, Ms. Toller did not check the department's internal system for an update before testifying at trial. Ms. Toller opined that, if Ms. Jackson's testimony was accurate, then the returns were timely filed under the mailbox rule.[1] Ms. Toller testified that it was "feasible" that

---

[1] Louisiana Administrative Code Title 61, Part 1, § 4911 states:

> 1. Delivery by the United States Postal Service. A return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service. The postmark must bear a date on or before the last date prescribed for filing the return, report or other document in order to be considered timely filed. If the postmark on the envelope is not legible, the taxpayer has the burden of proving the date that the postmark was made. If the return, report or other document is sent by United States registered or certified mail, the date of registration is treated as

Mr. Dickerson's returns were in the department's queue waiting to be processed, as the department receives "millions" of pieces of mail annually which could result in a backlog in the processing of returns.

In lawsuits challenging a candidate's qualifications on the basis of unfiled state tax returns, courts have found a *prima facie* case, that a candidate has not met the requirement of timely filing state tax returns, when the Louisiana Department of Revenue Confirms the failure to file *and* the candidate stipulates to that same fact. See, for example, *Nixon v. Hughes*, 15-1036 (La. App. 4 Cir. 9/29/15), 176 So. 3d 1135; *Brehm v. Shaddinger*, 21-59 (La. App. 5 Cir. 2/10/21), 315 So. 3d 363, 366, *writ denied*, 21-00240 (La. 2/25/21), 311 So.3d 350. In the instant case, however, Mr. Dickerson maintains the assertion that he filed his state taxes prior to qualifying. Also, the evidence and testimony adduced at trial from the Louisiana Department of Revenue did not foreclose on the possibility that Mr. Dickson met the legal definition of "filing" his returns, and also acknowledged the reality that the returns could be in a queue among a backlog of returns waiting to be processed. To that end, Ms. Braggs lacks the factual foundation which made similar challenges successful on their face.  Notably, counsel for Ms. Braggs did not ask the Louisiana Department of Revenue representative, Ms. Toller, to perform an updated search to determine whether the department had received Mr. Dickerson's returns.

We next consider whether Ms. Braggs made a prima facie case that Mr. Dickerson was untruthful. While actual delivery is required under both the federal and the Louisiana rule for the postmark rule to establish the filing date for tax purposes, it does not follow that the candidate must prove actual delivery of the

---

the date of postmark. A postage meter date is considered a valid postmark date provided it does not conflict with a legible United States Postal Service postmark date. If the dates conflict, the United States Postal Service date shall override the meter date.

return to be able to rely on the postmark rule for purposes of his certification in his Notice of Candidacy that the returns have been filed. *Russo v. Burns*, 14-1963 (La. 9/24/14), 147 So.3d 1111, 1114. Although proof of subsequent actual delivery of the return to the LDR definitely would have evidentiary value to either corroborate or refute the truth of the candidate's certification, it is not indispensible to, and its unavailability at the time of trial is not dispositive of, the question of whether the candidate's prior certification was truthful. *Crosby v. Cantrelle*, 20-252 (La. App. 5 Cir. 8/10/20), 301 So. 3d 1234, 1242, *writ denied*, 20-00996 (La. 8/14/20), 300 So.3d 876. What is required is objective evidence establishing that, at the time the candidate certified to having filed all tax filings or extensions, the candidate's sworn belief in subsequent delivery was justified. *Smith v. Charbonnet*, 17-0634 (La. App. 4 Cir. 8/2/17), 224 So.3d 1055, 1057-58, *writ denied*, 17-1364 (La. 8/7/17), 222 So.3d 722. As we observed, however, in *Lumar v. Lawson*, 20-251 (La. App. 5 Cir. 8/10/20), 301 So.3d 1243, 1256-57, *writ denied*, 20-00994 (La. 8/13/20), 300 So.3d 868, *reconsideration denied*, 20-00994 (La. 8/28/20), 301 So.3d 31:

> In other words, once a plaintiff makes *a prima facie* case for disqualification and the burden of proof shifts to the challenged candidate, the challenged candidate cannot carry her burden by simply professing a purely subjective, self-serving and unsupported "belief" that her returns have been filed. To the contrary, the challenged candidate must produce objective supporting evidence regarding the circumstances of mailing (e.g., proof of mailing by certified mail) to render her belief regarding filing a reasonable belief. In this case, *Lawson* lacked objective evidence supporting her belief regarding the filing of her tax returns.

In *Crosby v. Cantrelle*, *supra* at 1243, we found that a candidate could "clearly" demonstrate the basis of his objective belief through the trial testimony of a witness who mailed the return in question sufficient to overcome a plaintiff's *prima facie* case.

The plain language of La. R.S. 18:463 states, in relevant part:

> (2)(a) The notice of candidacy also shall **include a certificate**, signed by the candidate, **certifying all of the following**:
>
> \* \* \*
>
> (iv) Except for a candidate for United States senator or representative in congress, that for each of the previous five tax years, **he has filed his federal and state income tax returns**, has filed for an extension of time for filing either his federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.

(Emphasis added.) Here, the Louisiana legislature has provided that the certificate, without more, is sufficient to meet the requirements for qualification as a candidate. It is significant that the law, in its existing form, does not prescribe any methods whatsoever for verifying whether a return was, in fact, filed.

The general rule is that a lay witness is permitted to draw reasonable inferences from his or her personal observations. *State v. LeBlanc*, 05-885 (La. App. 1 Cir. 2/10/06), 928 So.2d 599, 603. The minority opinion in this case ignores the code of evidence and related statutes, and to follow its reasoning would result in an abrogation of well-settled evidentiary rules. For example, in a criminal case, the sworn testimony of a witness alone can be a sufficient basis to support a conviction and life sentence. It makes little sense to take this fundamental principle of evidence, and suggest that it is inappropriate for an election lawsuit that will result in denying citizens the right to vote for a candidate because the court has unilaterally taken that right away from them.

Here, the testimony that Mr. Dickerson's returns were timely filed was made by Ms. LaTonya Jackson, who physically placed them into the mail. Certainly, one can reasonably infer that placing a parcel into the hands of the U.S. Postal Service will result in delivery to the intended recipient. As observed by the Fourth Circuit in *Di Rosa v. Bosworth*, 225 So.2d 42, 45-46 (La. Ct. App.), *writ refused sub nom. Dirosa v. Bosworth*, 254 La. 843, 227 So. 2d 591 (1969):

22-CA-361                                                    8

While there is a presumption of receipt of mailed matter by the addressee the presumption does not arise until there is proof of actual mailing in a mail box or other depository under the control of the United States Post Office Department.

Corpus Juris Secundum states the rule as follows:

'In order to support a presumption of receipt of mail matter, there must be satisfactory proof that it was duly mailed, and there must be shown all those things which are necessary to impose on the government officers and employees the duty of transmitting and delivering the matter. Such proof need not consist of direct and positive testimony to the ultimate fact of mailing, and proof of the existence of an office practice or custom in the mailing of letters, together with proof that the custom was followed in the particular instance, may constitute sufficient evidence of mailing to support a presumption of due receipt.

'Where proof of an office routine or business practice is relied on to establish a mailing, according to the majority rule, there must be corroborating circumstances to support the inference that the custom has been carried out. Thus, the person who is claimed to have mailed the letter ordinarily must appear and testify that he complied with the custom and performed his duty; but there is authority to the contrary. 31A C.J.S. Evidence s 136(c), page 294.

On the question of proof of mailing by showing office custom American Jurisprudence states:

1119. Business or office custom or usage of sender.

'The authorities are not agreed as to what evidence of a private business custom or usage is sufficient to prove the mailing of a letter.

Obviously, in an office handling a great deal of correspondence, one can very seldom remember the fact of mailing any particular letter, so the rule has become established in many jurisdictions in such instances that proof of mailing may be made by showing an office custom with respect to mailing and compliance with the custom in the specific instance. In most instances, however, it is held that proof of a usage in the sender's office whereby letters deposited in a particular place are taken by an employee and mailed by him is not sufficient of itself to establish the fact that a letter so deposited was mailed, in the absence of proof showing a compliance with the custom.

Because of the direct evidence of mailing from Mr. Dickerson's tax preparer,

whose business necessarily includes the filing of tax returns in the same manner,

we find these facts distinguishable from *Russo v. Burns*, 14-1963 (La. 9/24/14),

147 So.3d 1111, where no direct evidence of the mailing of returns was presented.

The pivotal issue in this appeal is whether, at the time he signed the Notice of Candidacy, Mr. Dickerson reasonably believed that his Louisiana tax returns for the years 2020 and 2021 had been filed. To rebut the plaintiff's *prima facie* case, Mr. Dickerson presented objective supporting evidence in the form of the testimony of Ms. Jackson, the professional tax preparer who prepared his tax returns for the previous five years. Ms. Jackson testified, under oath, that she prepared Mr. Dickerson's 2020 and 2021 tax returns on July 14, 2022 and mailed them that same date. Although Ms. Toller, the representative of the Louisiana Department of Revenue testified that as of July 27, 2022, the department had not received Mr. Dickerson's 2020 and 2021 returns, she unequivocally stated that the department receives "millions of pieces of mail" and it was "feasible" that the returns were in line to be processed. There was nothing in the record to show that Ms. Toller, or anyone from the department, was asked to perform an updated search after July 27, 2022 to determine whether the returns had been received. Furthermore, Ms. Toller was not asked to perform an updated search of the department's records at trial.

There is nothing in the law that requires a candidate to mail their tax returns via certified mail. Rather, the requirement is that the candidate must show a reasonable belief that the returns were filed at the time he signs the Notice of Candidacy. In the instant case, Mr. Dickerson has done so via the testimony of LaTonya Jackson, the professional tax preparer who testified under oath that she mailed the 2020 and 2021 returns on July 14, 2022. Mr. Dickerson did not file his Notice of Candidacy on the first day of qualifying, nor did he file the notice of candidacy on the second day of qualifying. Rather, he waited until the afternoon of the third day of qualifying, just before the qualifying ended, to file his notice of candidacy in order to ensure he was in compliance with all of the requirements for candidacy.

It is fundamental to our society for our electorate to choose its leaders. *Becker v. Dean*, 03-2493 (La. 9/18/03), 854 So. 2d 864, 869. The purpose of the election process is to provide the electorate with a wide choice of candidates. *Williams v. Ragland*, 567 So.2d 63, 66 (La. 1990). **"The interests of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice of candidates**." *Becker, Id*. The lawmaking power of our State is vested in the Legislature. See *Krielow v. Louisiana Dep't of Agric. & Forestry*, 13-1106, (La. 10/15/13), 125 So.3d 384, 388. In our review of this matter, we must be guided by the principles interpreting the laws to give the electorate the widest possible choice of candidates. Should we accept the interpretation of the appellant, that the challenged candidate must show that their tax returns, which have not been received by the department, were mailed via certified mail, we would overstep our bounds thereby hindering the intent of our legislature.

In applying the manifest error standard of review with the directive that the resolution as to any doubt concerning the qualifications of a candidate should resolved to allow the candidate to run for public office. Accordingly, we find Mr. Dickerson successfully rebutted the allegation that his tax returns had not been filed at the time he signed the Notice of Candidacy.

### *Domicile Issue*

The trial court found that the Ms. Braggs failed to make a *prima facie* showing that Mr. Dickerson's domicile is any place other than 1336 Francis Street in Marrero.

In *Landiak v. Richmond,* 05-0758 (La. 3/24/05), 899 So.2d 535, 542, the supreme court articulated Louisiana's well established definition of "domicile," and distinguished it from the concept of "residence."

The terms "residence" and "domicile" are legal terms that are not synonymous. *Becker*, 03-2493 at 10, 854 So.2d at 871. The most oft-cited difference between the two concepts is that a person can have several residences, but only one domicile. *Becker*, 03-2493 at 10, 854 So.2d at 871. Domicile is an issue of fact that must be determined on a case-by-case basis. *Darnell v. Alcorn*, 99-2405, p. 5 (La. App. 4 Cir. 9/24/99), 757 So.2d 716, 719, *writ denied*, 99-2795 (La.9/28/99), 747 So.2d 1130.

The party seeking to establish a change in domicile bears the burden of proving that change. So long as a reasonable doubt remains, the presumption is that the domicile has not been changed. *Succession of Lauricella*, 571 So.2d 885 (La. App. 5 Cir. 1990). Some types of documentary evidence commonly considered by courts to determine domicile include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. The more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence. *Graham v. Prevost*, 15-1033 (La. App. 4 Cir. 9/29/15), 176 So.3d 1142, 1145. When a party has not declared his intention in the manner prescribed by La. C.C. art. 42, proof of a person's intention regarding domicile "shall depend upon circumstances." La. C.C. art. 43. Thus, determination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. *Davis v. Glen Eagle Ship Management Corp*., 97-0878 (La. App. 4 Cir. 8/27/97), 700 So.2d 228, 230.

We first note that Ms. Braggs offered no evidence at trial that Mr. Dickerson had ever declared his wife's residence on Tulip Court to be his domicile. To the contrary, all of Ms. Braggs' exhibits demonstrated that Mr. Dickerson listed his domicile at the Francis St. address.

On the issue of Mr. Dickerson's domicile, the following testimony was adduced at trial:

Mr. Dickerson stated under oath that his address is 1336 Francis Street in Marrero, and that he's lived there with his parents since 1986, except for his time in college. He indicated that both his driver's license and his passport bear that address. Mr. Dickerson estimated that he spent approximately 80-85% percent of his time in his parent's home and explained that he often stays with his mother because his father frequently works nights, and he being there helps to ease her anxiety. He indicated that his wife's address is 3217 Tulip Court, a home that is her separate property, which is also in Marrero. Mr. Dickerson testified that he and wife have always lived apart, including in the 10 years before their marriage, and that the arrangement was suitable for them as a couple. He stated that he owns nothing inside of his wife's house and has no homestead exemption of his own to claim. Bianca Davis, Mr. Dickerson's wife, similarly testified that she and Mr. Dickerson had been married for five years but have never lived together during their marriage or in the ten years they were dating. She estimated that defendant lived 80% of the time at his parent's house in the past year.

Other witnesses at trial included Mr. Dickerson's parents, David and Karen Dickerson. David Dickerson confirmed that he had worked offshore until approximately five years ago. He also indicated that his son does not pay rent or the mortgage, as the family home is already paid for. Finally, David Dickerson stated that his son's voter registration is at the Francis Street address. Karen Dickerson testified that her son keeps a lot of clothes at her house and occasionally helps to pay the utility bills in the home. She also stated that her son spends most of his time at the Francis Street address. Finally, two of the Dickersons' neighbors on Francis Street testified. Diane Lewis, stated that she had been a neighbor of the

Dickersons for over 45 years and saw the defendant "quite frequently" at his parent's home. Wyndell Harang claimed to see the defendant almost every day.

Because domicile requires a physical residence plus the intent to habitually reside at a certain location, a party's uncontroverted testimony regarding his intent "may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary." *Landiak*, 899 So.2d at 543. However, there is a legal presumption against a change of domicile such that a party seeking to show that domicile has been changed must present "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." *Russell v. Goldsby*, *supra* at 1051. Proof of the intent to change one's domicile depends on the circumstances, including whether a person has recorded a sworn declaration of intent to change domiciles. La. C.C. art. 45.

In the absence of any evidence to the contrary introduced at trial, we see no manifest error in the trial court's ruling that Ms. Braggs had failed to establish a *prima facie* case regarding Mr. Dickerson's domicile.

## CONCLUSION

While Ms. Braggs arguably did not make a *prima facie* case showing that Mr. Dickerson had not paid his state taxes for the years 2020 and 2021, under the facts presented, we find no error in the trial court's ruling that Mr. Dickerson sufficiently demonstrated the basis of his objective belief that the returns were timely placed in the mail by his tax preparer. Ms. Braggs failed to make a *prima facie* case at trial that Mr. Dickerson's domicile was not the St. Francis Street address, as indicated in his notice of candidacy. For the foregoing reasons, we find

no manifest error in the trial court's ruling that maintained Mr. Dickerson's candidacy. Accordingly, the judgment of the trial court is affirmed.

**<u>AFFIRMED</u>**

VERONICA BRAGGS                          NO. 22-CA-361

VERSUS                                   FIFTH CIRCUIT

SIMEON DICKERSON AND JON A.              COURT OF APPEAL
GEGENHEIMER, JEFFERSON PARISH
CLERK OF COURT                           STATE OF LOUISIANA


**GRAVOIS, J., DISSENTS WITH REASONS**

I respectfully dissent in part from the majority's opinion affirming the trial court's judgment maintaining Mr. Dickerson's candidacy. I disagree with the majority's conclusion that Mr. Dickerson provided sufficient evidentiary support that he had a reasonable belief that his state tax returns for the years 2020 and 2021 had been filed at the time he certified the same by signing his Notice of Candidacy form on July 22, 2022, and thus, I believe that the evidence shows that Mr. Dickerson should be disqualified from the forthcoming election for District 5 of the Jefferson Parish School Board.

While I agree with the majority's recitation of the facts, framing of the issue, and recitation of the relevant law, I disagree with the majority's interpretation of the point of law set forth by the Supreme Court in *Russo v. Burns*, 14-1963 (La. 9/24/14), 147 So.3d 1111, and as interpreted by this Court in *Lumar v. Lawson*, 20-251 (La. App. 5 Cir. 8/10/20), 301 So.3d 1243, *writ denied*, 20-994 (La. 8/13/20), 300 So.3d 868, *reconsideration denied*, 20-994 (La. 8/28/20), 301 So.3d 31.

In this case, Mr. Dickerson's tax preparer, Ms. LaTonya Jackson, testified that she prepared his 2020 and 2021 state tax returns on July 14, 2022, and placed them in the regular mail that same day. The returns were not sent by certified mail, and no other evidence, documentary or otherwise objective, was offered by Mr. Dickerson regarding the circumstances of such mailing.

The *Russo* case also dealt with a challenged candidate who was alleged to have falsely certified that his tax returns had been filed as required. Mr. Russo, the

petitioner, presented evidence that the La. Department of Revenue had no tax returns on file for Mr. Burns for the relevant tax years. Mr. Burns countered this evidence with the testimony of his hired tax preparer, a Ms. Jackson, who testified that she prepared and filed his returns. She also testified that while she did not physically go inside the post office to mail his returns, she drove the person from her office to the post office who mailed the returns. The returns were mailed via regular mail, not certified mail.

The Supreme Court, in reversing the lower courts' judgments finding that Mr. Burns should remain qualified as a candidate, found that the evidentiary burden had shifted to Mr. Burns to prove that he had filed his returns, and that Mr. Burns had failed to rebut the evidence introduced by the petitioner from the Department of Revenue that no returns had been filed. The Supreme Court held:

> … Without sending the returns via certified mail or otherwise ensuring their **delivery** to LDR, Burns could not have known whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of Candidacy. We find Russo presented a *prima facie* case, which has not been rebutted by Burns, that the tax returns have not been **delivered** to LDR and were therefore not **filed.** Accordingly, we hereby reverse the trial court and disqualify Burns from candidacy for the office of Orleans Parish District Attorney for falsely certifying the filing of these tax returns. (Emphasis in original.)

*Russo v. Burns*, 147 So.3d at 1114.

This Court recently interpreted the Supreme Court's *Russo* language in *Lumar v. Lawson*, *supra.* Therein, this Court held:

> Our interpretation of the Supreme Court's ruling in *Russo* is that the challenged candidate is not required to prove actual delivery to the LDR, but that the challenged candidate must show <u>reliable circumstances of mailing</u> (*e.g.*, by certified mail), that would tend to ensure delivery, to maintain a justified reasonable belief that her returns have been filed as of the date of her certification to that effect in her Notice of Candidacy.
>
> In other words, once a plaintiff makes a *prima facie* case for disqualification and the burden of proof shifts to the challenged candidate, the challenged candidate cannot carry her burden by simply professing a purely subjective, self-serving and unsupported "belief" that her returns have been filed. To the contrary, the challenged

candidate must produce <u>objective supporting evidence regarding the circumstances of mailing</u> (*e.g.*, proof of mailing by certified mail) to render her belief regarding filing a reasonable belief. In this case, Lawson lacked objective evidence supporting her belief regarding the filing of her tax returns. (Emphasis added.)

*Lumar v. Lawson*, 301 So.3d at 1256-57.

In the present case, Ms. Braggs made a *prima facie* case that Mr. Dickerson failed to file his state tax returns by the introduction of undisputed evidence from the Department of Revenue that it possessed no filed returns from Mr. Dickerson for the relevant tax years. The burden then shifted to Mr. Dickerson to rebut this showing. In my opinion, Mr. Dickerson failed to meet his burden. I respectfully disagree with the majority's conclusion that the testimony of Mr. Dickerson's tax preparer, Ms. LaTonya Jackson, sufficiently met his burden of proof of "objective supporting evidence regarding the circumstances of mailing." *Lumar, supra*. This testimony alone, without any other *objective* evidence establishing that the returns were in fact mailed, is subjective and unsupported, and is not in my opinion distinguishable in character from the insufficient testimony of the tax preparer in *Russo*.

The present case is distinguishable from the case of *Crosby v. Cantrelle*, 20-252 (La. App. 5 Cir. 8/10/20), 301 So.3d 1234, 1241, *writ denied*, 20-00996 (La. 8/14/20), 300 So.3d 876. Therein, this Court held that the petitioner's *prima facie* case that the challenged candidate had falsely certified that he had filed his tax returns, which was established by evidence from the Department of Revenue showing no receipt of the relevant tax returns, was properly rebutted by the testimony of the candidate's wife that she had mailed the returns via certified mail. Importantly, her testimony was objectively supported by the admission into evidence of her United States Postal Service's certified mail receipts which showed both the postage and the date of the returns' mailing. Thus, <u>unlike in the present</u>

case or the *Russo* case, her testimony was supported by objective evidence establishing "reliable circumstances of mailing," (*i.e.*, the certified mail receipts).

I do not read *Russo* or this Court's application of *Russo* in *Lumar* so narrowly as to mean that only certified mail receipts to support evidence of the mailing of returns are sufficient to meet a challenged candidate's burden of proof. In this case, however, Mr. Dickerson failed to present <u>any objective evidence of any type</u> tending to show "reliable circumstances of mailing" that would ensure delivery of his tax returns, and thus that he maintained a justified reasonable belief that his returns were filed as of the date of his certification to that effect in his Notice of Candidacy form. I further find that the testimony of Ms. Emily Toller of the Department of Revenue, who hypothesized on cross-examination that the absence of evidence of the Department's receipt of Mr. Dickerson's returns might be explained by the possibility of them being in the queue of a "backlog of returns," does not concern the "reliable circumstances of mailing" as explicitly required by *Lumar*, and as in my opinion impliedly required by *Russo*, and thus does not satisfy Mr. Dickerson's evidentiary burden in this regard.[2]

All things considered, unless and until the Legislature amends La. R.S. 18:463(A)(2)(a) and/or the Supreme Court changes its interpretation of La. R.S. 18:463(A)(2)(a), I feel that we are constrained to follow the Supreme Court's interpretation of La. R.S. 18:463(A)(2)(a) in *Russo*.

Finally, I find that although the majority attempts to distinguish *Russo* and *Lumar* from the present case, such attempt in my opinion is in vain, as in my

---

[2] *See also Cranch v. Wicker*, 20-716 (La. App. 1 Cir. 8/13/20), 311 So.3d 384, 389, *writ denied*, 20-01015 (La. 8/21/20), 301 So.3d 31, a factually similar case, wherein the First Circuit, in following *Russo*, found that based on the testimony and evidence presented, the district court manifestly erred in finding that "Wicker [the candidate] rebutted plaintiffs' *prima facie* showing by establishing that her tax returns had been filed. Rather, *given the lack of any testimony or evidence as to when her 2018 tax return was delivered to the LDR*, Wicker failed to rebut plaintiffs' evidence establishing a *prima facie* case for disqualification." (Emphasis added.) As such, the objection to the candidacy of Wicker was sustained and she was disqualified.

opinion there is no difference of meaningful consequence among all three of these cases. As such, the result of all three of these cases should be the same: disqualification of the challenged candidate.

For the foregoing reasons, I would reverse the trial court's judgment and find that Mr. Dickerson should be disqualified on these grounds for the forthcoming election for the District 5 seat on the Jefferson Parish School Board.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 9, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-361**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
STEPHEN M. GELE (APPELLANT)      MICHAEL J. MONISTERE (APPELLEE)      W. J. LEBLANC, JR. (APPELLEE)
WILLIAM PETER CONNICK (APPELLEE)      CAREY B. DASTE (APPELLEE)

**MAILED**
ANDRE M. STOLIER (APPELLANT)
ATTORNEY AT LAW
201 SAINT CHARLES AVENUE
SUITE 3702
NEW ORLEANS, LA 70170